# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JAPAN CASH MACHINE CO., LTD, and )
JCM AMERICAN CORPORATION )   2:05-cv-01433-RCJ-RJJ
                         )
　　　　　Plaintiffs,        )
                         )   **ORDER**
　　vs.                    )
                         )
MEI, INC.,                )
                         )
　　　　　Defendant.         )
                         )

Before the Court are Defendant MEI Inc.'s ("MEI") Motion to Reconsider, or in the Alternative, for Leave to Supplement the Expert Report of Theodore Grossman (#172) and Plaintiffs Japan Cash Machine Co., Ltd. and JCM American Corporation's (collectively, "JCM") Motion to Dismiss MEI's Second and Fifth Counterclaims without Prejudice, or in the alternative, Motion to Bifurcate. (#170). The Court has considered the motions, briefs, and pleadings on behalf of all parties. IT IS HEREBY ORDERED that MEI's Motion to Reconsider, or in the Alternative, for Leave to Supplement the Expert Report of Theodore Grossman and JCM's Motion to Dismiss MEI's Second and Fifth Counterclaims without Prejudice are *denied*. IT IS FURTHER ORDERED that JCM's Motion to Bifurcate is *granted*.

## I.    FACTUAL BACKGROUND

Japan Cash Machine manufactures and sells bill acceptor and bill validator devices, which are used in gaming machines such as slot machines and video poker machines. Since the early

1990s, Japan Cash Machine has sold bill acceptor and bill validator devices in the United States through its wholly-owned subsidiary, JCM American.

Japan Cash Machine is the assignee and owner of two patents related to its bill acceptor or validation devices. U.S. Patent No. 5,372,361 ("the '361 patent") is directed at a bill handling apparatus for a gaming machine having a bill stacker with a removable pusher. U.S. Patent No. 5,420,406 ("the '406 patent") is directed at a bill validator with a bar code detector that is relevant to gaming devices that include the ability to accept a bar coded ticket used in "ticket-in-ticket-out" gaming machines. Japan Cash Machine manufactures several products that embody the patents-in-suit (*e.g.*, WBA and UBA product series). JCM American is allegedly JCM's exclusive distributor in the United States for Japan Cash Machine's products covered by the '361 and '406 patents.

MEI manufactures payment system technologies, such as electronic bill acceptors, coin mechanisms, and other unattended transaction systems. For years MEI has worked to develop payment system technologies across various industries that help customers operate more efficiently and profitably. MEI sells payment system products, including as part of the MEI CashFlow SC Series, which MEI claims it has been selling in the United States since at least as early as 2002. MEI also sells a bill validator device called the "ZT 1200," which operates similarly to the CashFlow bill validator.

## II. PROCEDURAL BACKGROUND

In December 2005, JCM sued MEI for infringement of the '361 and '406 patents. JCM claims that MEI has infringed at least one or more claims of the patents-in-suit, either literally or under the doctrine of equivalents. JCM claims that MEI has imported, exported, had made, used, distributed, sold, and/or offered to sell one or more products, including the MEI Cash Flow SC Series products or ZT 1200, that embody the invention(s) of the patents-in-suit.

During the spring and summer of 2007, the Parties conducted discovery and briefing related to the claim construction of the patents-in-suit. In June 2007, the Court held the *Markman* hearing

(#71). On September 27, 2007, the Court issued the *Markman* order. (#77). MEI filed motions for partial summary judgment (#109, 110, 112, 113, 115, 119) on May 19, 2008. On October 21, 2008, the Court granted MEI's motion for partial summary judgment for noninfringement of the '406 patent. (#169). The Court denied MEI's motion for partial summary judgment for noninfringement of the '361 patent, for invalidity of the '406 patent, for lack of standing and inability to collect damages on behalf of a third party, and for inability to collect certain lost profits/damages and failure to mark. (#169).

In response to the Court's Order, the Parties have filed the present motions. MEI has moved the Court to reconsider its denial of MEI's motion for partial summary judgment for invalidity of the '406 patent. (#172). If the Court denies MEI's motion for reconsideration, MEI has asked the Court to allow MEI to supplement the expert report of Professor Theodore Grossman. (#172). JCM has moved the Court to dismiss MEI's counterclaims for invalidity and unenforceability of the '406 patent. (#170). JCM has also requested that the Court bifurcate the trial, trying MEI's counterclaim for inequitable conduct in a separate bench trial.

**III.   MOTION TO RECONSIDER**

The Court has discretion to reconsider and vacate a prior order. *Barber v. Hawaii*, 42 F.3d 1185, 1198 (9th Cir. 1994); *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 396 (9th Cir. 1992). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993), cert. denied, 512 U.S. 1236 (1994). Motions for reconsideration are disfavored, however, and are not the place for parties to make new arguments not raised in their original briefs. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001); *Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988). Nor is reconsideration to be used to ask the court to rethink what it has already thought. *See Walker v.*

1 *Giurbino*, 2008 WL 1767040, *2 (E.D. Cal. 2008); *United States v. Rezzonico*, 32 F.Supp.2d 1112, 1116 (D. Ariz. 1998). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *U.S. v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001). Motions to reconsider are committed to the discretion of the trial court. *See Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C. Cir. 1987); *Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir. 1983) (en banc). To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D. Cal. 1986), aff'd in part and rev'd in part on other grounds, 828 F.2d 514 (9th Cir. 1987).

MEI urges the Court to grant MEI's Motion for Reconsideration. MEI's argument is based on the ground that Mr. Izawa's admission that JCM sold "the very invention itself" to a third party is sufficient to meet MEI's burden of proving by clear and convincing evidence that the '406 patent was ready for patenting more than one year prior to the date of the '406 patent application. MEI supports its argument by citing two Federal Circuit decisions: *STX, LLC v. Brine, Inc.*, 211 F.3d 588 (Fed. Cir. 2000) and *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290 (Fed. Cir. 2002). MEI concedes that it already presented these two cases to the Court in its prior briefs. On a motion for reconsideration, MEI must do more than recapitulate the cases and arguments that it previously proffered to the Court. On this ground alone, the Court denies MEI's motion.

Nonetheless, the Court will explain why the two cases upon which MEI relies have not persuaded the Court to change its position. In *STX*, the plaintiff, STX, which manufactured lacrosse equipment and owned a patent for a lacrosse stick head, sued Brine, Inc. and Warrior Lacrosse, Inc. for manufacturing lacrosse sticks that allegedly infringed the patent-in-suit. *See STX*, 211 F.3d at 589. In defense, Warrior Lacrosse, Inc. argued that the patent-in-suit was invalid and unenforceable for violating the on-sale bar of 35 U.S.C. § 102(b). *See id.* The district court concluded, and the

Federal Circuit affirmed, that STX had violated the on-sale bar, which resulted in summary judgment being granted to the defendants.

Factually, the *STX* decision does not stand on all fours with the present facts before the Court. In *STX*, the record was "undisputed" that STX had a commercial embodiment of the patent-in-suit prior to the critical date. *Id.* at 591. In *STX*, the critical date was September 20, 1984. *See STX, Inc. v. Brine, Inc.*, 37 F.Supp.2d 740, 756 (D.Md. 1999). In June 1984, STX produced a sales brochure touting that STX had gone "a step further with what promises to be an exciting new stick for next season," and urged customers to "[l]ook for it towards the end of summer at your favorite sporting goods store." *Id.* On September 18, 1984, STX received the "first squeezes" of the patented invention from the manufacturer. *Id.* On September 18, 1984, an STX salesman wrote a purchase order for 112 patented lacrosse sticks, which were delivered without modification later that fall. *See id.* The record was clear that those "first squeezes" were the commercial embodiment of the patent-in-suit. STX used the "first squeezes" produced on September 18, 1984 in STX's marketing efforts several days later at a national trade show in Chicago. *Id*. The record showed that on September 17 and 18, 1984, an STX salesman was "on the road" making sales calls to multiple retailers, including the retailer to which STX sold the 112 patented lacrosse sticks on September 18, 1984. *Id.* Around September 21, 1984, STX received 4,000 printed catalogs containing a full-page layout relating to, and including a photograph of, the patented lacross head. *Id*. Even before the disputed sale on September 18, 1984, STX had produced a model of the patented invention that allowed it to gain approval for its design from the United States Intercollegiate Lacrosse Association Rules Committee. *STX*, 211 F.3d at 591.

In *New Railhead Mfg.*, New Railhead, the owner of two patents related to a drill bit for horizontal directional drilling of rock formations and a method for horizontal directional drilling sued Vermeer Manufacturing Company ("Vermeer") and Earth Tool Company, L.L.C. ("Earth Tool"), for infringement of the two patents-in-suit. 298 F.3d at 1292. The '283 patent related to a

drill bit and the '743 patent related to a drilling method involving the drill bit. Vermeer moved for summary judgment on invalidity, arguing that the '743 patent was invalid because the method claimed therein had been in public use for more than one year before the February 1997 filing date of the provisional application upon which the patent-in-suit was based. *See id.* at 1293. The evidence of public use one year prior to the critical date consisted of evidence that on several occasions beginning in January 1996, the inventor had allowed an acquaintance who was the foreman of a drilling team working for a third party to test the drill bits at a public job site to determine if they functioned properly. *See id.*

Like the *STX* decision, the *New Railhead Mfg.* decision does not factually stand on all fours with the present case before the Court. In that decision, New Railhead acknowledged that the method of the '743 patent was performed whenever the drill bit of the '283 patent was used. *See id.* at 1292. The parties did not dispute that the January use of the drill bit later claimed in the '283 patent met each limitation of the claims in the method of the '743 patent. *See id.* at 1298. The principal dispute involving the '743 patent was whether or not subsequent use of the patented method was experimental, not whether the January use of the patented method met each and every claim limitation of the '743 patent. As a result, the court was able to conclude that "there [was] no suggestion whatsoever that Freeman's January 1996 use of the patented method did not meet each and every claim limitation in the '743 patent." *Id.* at 1299.

The Court does not have the same clear and convincing facts that the courts had in *STX* or *New Railhead Mfg.*. The party challenging a patent's validity bears the burden of proving, by clear and convincing evidence, that "there was a definite sale or offer to sell more than one year before the application for the subject patent, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention." *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1045-46 (Fed. Cir. 2001) (citations omitted). The present case does not have the same undisputed, comprehensive record of *STX*. The present case does not have an agreement between the parties over

whether the patented invention was ready for patenting, like that in *New Railhead Mfg.*. Although "[t]he ultimate question of whether an invention was placed on sale in violation 35 U.S.C. § 102(b) is a question of law . . . the inquiry is inherently based on underlying questions of fact." *Fisher-Price, Inc. v. Safety 1st, Inc.*, 109 Fed.Appx. 387, 391 (Fed. Cir. 2004) (citations omitted). A court's determination that a question of fact underlying the on-sale bar inquiry exists can preclude summary judgment. *See, e.g., Helifix Ltd. v. Blok-Lok, Ltd.,* 208 F.3d 1339 (Fed. Cir. 2000) (vacating the district court's grant of summary judgment of patent invalidity for violation of on-sale bar because there were genuine issues of material fact whether the invention was ready for patenting at the time of a trade show)*; Robotic Vision Systems, Inc. v. View Engineering, Inc.*, 112 F.3d 1163 (Fed. Cir. 1997) (reversing district court's grant of summary judgment and concluding that there was a genuine issue of material fact concerning whether the invention was on sale within the meaning of section 102(b)).

       In view of the specific facts on the record, the Court determined that there exists a genuine issue of material fact whether the four models that JCM sold to SGI in October 1992 embodied each and every claim limitation of the '406 patent. Although Mr. Izawa's testimony that the October 1992 models "represented the very intention itself" is persuasive evidence in support of MEI's case of invalidity, the Court determined that this conclusory testimony standing alone, when considered in connection with the entire record, did not rise to the level of clear and convincing evidence. Mr. Izawa's testimony did not clearly and convincingly establish that the October 1992 models constituted an embodiment that meets every limitation of the '406 patent. In light of the present record, this inquiry is a question of fact more appropriately left for the jury's determination. *See Honeywell Intern. Inc. v. Universal Avionics Systems Corp.*, 488 F.3d 982, 997 (Fed. Cir. 2007) (affirming judgment that claims to an aircraft terrain warning system were not proven invalid for an on-sale bar, finding that the invention was not "ready for patenting" at the time of the sale where testing to show that the invention would work for its intended purposes were carried on well after

the critical date); *A.G. Design & Associates, LLC v. Trainman Lantern Co., Inc.*, No. C07-5158, 2008 WL 2519818, *3 (W.D. Wash. June 20, 2008) (denying summary judgment of invalidity for an on-sale bar since there were disputed facts if products sold by the patentee before the critical date met each limitation of the challenged claims).

For the foregoing reasons, the Court denies MEI's Motion for Reconsideration.

**IV.   MOTION TO DISMSS**

JCM has moved the Court to dismiss without prejudice MEI's Second (Declaratory Judgment for Invalidity of the '406 Patent) and Fifth (Declaratory Judgment for Unenforceability of the '406 Patent) Counterclaims (and related defenses) alleging that the '406 patent is invalid and unenforceable. JCM premises its motion to dismiss on two principal arguments. First, JCM argues that dismissal is appropriate because a case or controversy no longer exists on MEI's counterclaims since the Court granted summary judgment to MEI for noninfringement of the '406 patent. Second, JCM argues that dismissal is appropriate in furtherance of judicial economy.

**A.   Mootness**

In *Cardinal Chemical Co. v. Morton International, Inc*, 508 U.S. 83, 96 (1993), the Supreme Court held that the issue of validity is not mooted when a finding of noninfringement is made or affirmed. The Federal Circuit has interpreted the holding of *Cardinal Chemical* as limited solely to the appellate jurisdiction of the Federal Circuit to vacate a judgment of invalidity. *See Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1060 (Fed. Cir. 1995), rev'd on other grounds, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 n.11 (2007) (characterizing *Cardinal Chemical* as a "relatively narrow" decision that ended the Federal Circuit's routine practice of vacating declaratory judgments of invalidity where noninfringement had already been found).

In short, *Cardinal Chemical* did "not revolutionize the justiciability of declaratory judgment actions attacking a patent's validity" and "a party seeking a declaratory judgment still has the burden of establishing the existence of an actual case or controversy." *Super Sack Mfg. Corp.*, 57 F.3d at

1060 (omitting internal quotations marks). To that end, the Federal Circuit recently held that "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) (citation omitted). By suing MEI for alleged infringement of the '406 patent, JCM put MEI "in the position of either pursuing arguably illegal behavior or abandoning that which [MEI] claims a right to do." *Id*. Although the Court has held that MEI has not infringed the '406 patent, JCM has made clear that it disagrees with the holding and intends to appeal the decision to the Federal Circuit. (#170 at 3). Therefore, JCM evidently maintains the position that MEI has infringed and continues to infringe the '406 patent and intends to take such a position to the Federal Circuit. MEI should not have to risk continuing to pursue a course of conduct that JCM is going to legally contest. The Court finds that "the facts alleged under all the circumstances show that there is a substantial controversy between" MEI and JCM, who clearly have "adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune Inc. v. Genentech Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). As a result, a case or controversy exists between MEI and JCM, and the Court has jurisdiction to consider MEI's invalidity and unenforceability counterclaims.

     A district court has the discretion to keep or dismiss an invalidity or unenforceability counterclaim after issuing a judgment of noninfringement. In *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459 (Fed. Cir. 1998), the Federal Circuit recognized that a district court has the "discretion to dismiss a counterclaim alleging that a patent is invalid as moot where it finds no infringement." *Id.* at 1468. Exercising the discretion granted to the Court and applying the declaratory judgment standard articulated by the Supreme Court in *MedImmune*, the Court declines to dismiss MEI's counterclaims.

**B.     Judicial Economy**

JCM argues that "[i]t is a waste of the parties and Court's resources to try MEI's counterclaims until the outcome of JCM's appeal of the '406 non-infringement finding is known." (#170 at 3).

Judicial economy encompasses many rationales, but the controlling interest behind the concept involves "sound judicial administration." *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 365 (3d Cir. 1975). The Federal Circuit has recognized that judicial economy also implicates "[j]udicial concern about duplicative litigation due to jurisdictional conflicts." *Far West Fed. Bank, S.B. v. OTS*, 930 F.2d 883, 891 (Fed. Cir. 1991).

The Court finds that dismissal of MEI's counterclaims would not serve the interest of judicial economy. JCM has expressed its intent to appeal the Court's grant of summary judgment in favor of MEI on noninfringement of the '406 patent. If the Federal Circuit ultimately reverses the Court's judgment, the case will be back before the Court. At that time, the Court would likely have to consider the counterclaims that JCM is now seeking to dismiss. JCM and MEI will then have to brief those counterclaims again. If JCM or MEI is not content with the Court's judgment on the counterclaims at that time, then such party is likely to appeal the Court's judgment again to the Federal Circuit. Because JCM and MEI have thoroughly briefed the counterclaims and because they are going to trial on the '361 patent, the Court deems that judicial economy would best be served by dealing with the counterclaims at this time. Furthermore, because JCM intends to appeal the Court's judgment on noninfringment of the '406 patent, resolution of MEI's counterclaims will provide the Federal Circuit with a more complete record on which to base its decision.

Also, there is a some overlap in fact witnesses between the '361 patent and '406 patent. Many of the witnesses who will testify at trial on the '361 patent would also be needed to testify at trial on the '406 patent counterclaims. Some of these witnesses, such as Masanobu Fujita and Hikaru Izawa, will be attending trial at great expense, flying all the way from Japan. The Court

believes that judicial economy would best be served by taking advantage of the presence of these witnesses at trial by allowing them to testify on the '361 patent infringement issue and the '406 patent counterclaims. For several months, JCM has been planning on going to trial on the '406 patent counterclaims. The Court does not see how proceeding as planned would impose any unforeseeable costs that JCM has not already been planning on making.

For the foregoing reasons, the Court declines to dismiss MEI's counterclaims.

**C.     Bifurcation**

JCM seeks to bifurcate the issue of inequitable conduct from the jury trial. The Federal Rules of Civil Procedure state the following:

> The Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim or third-party claim, or of any separate issue, or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Fed. R. Civ. P. 42(b). The Federal Circuit has held that bifurcation may be appropriate where the claims of inequitable conduct and invalidity or infringement "are distinct and without commonality either as claims or in a relation to the underlying fact issues." *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1322 (Fed. Cir. 2006). "The defense of inequitable conduct in a patent suit, being entirely equitable in nature, is not an issue for a jury to decide." *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993). *See also PerSpective Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318 (Fed. Cir. 2000) ("The defense of inequitable conduct is entirely equitable in nature, and thus not an issue for a jury to decide."). "[A] judge retains the discretion to conduct a bench trial on the equitable issues of unenforceability in the same case where invalidity is to be tried to a jury." *Agfa Corp. v. Creo Products, Inc.*, 451 F.3d 1366, 1375 (Fed. Cir. 2006) (district court held a separate bench trial on inequitable conduct first with the plan to hold a jury trial on validity and infringement following the

bench trial). *See also, eSpeed, Inc. v. Brokertec USA, L.L.C.,* 480 F.3d 1129 (Fed. Cir. 2007) (district court simultaneously conducted a jury trial on validity and infringement, and a bench trial on inequitable conduct)*; Life Techs., Inc. v. Clontech Lab., Inc.*, 224 F.3d 1320, 1324 (Fed. Cir. 2000) ("the determination of inequitable conduct is ultimately committed to the discretion of the district court [and reviewed on appeal] for abuse of discretion").

To prove that the '406 patent is unenforceable because of JCM's inequitable conduct, MEI must prove by clear and convincing evidence that (1) JCM withheld prior art that was material to the PTO's patent decision; (2) JCM knew of the prior art and its materiality; and (3) JCM's failure to disclose the prior art was a result of an intent to mislead the PTO. *See Elk Corp. of Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 30 (Fed. Cir. 1999). When weighing the competing equities under Rule 42(b), prejudice is the Court's most important consideration. *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.,* No. CV 03-0597, 2007 WL 3208540, at *1 (D.Ariz. Oct. 30, 2007) (citing *Laitram Corp. v. Hewlett-Packard Co.*, 791 F.Supp. 113, 114 (E.D. La. 1992)) (stating that "even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice. Essentially, . . . courts must balance the equities in ruling on a motion to bifurcate.").

Regarding prejudice to the parties, if the instant trial is not bifurcated and MEI's evidence relevant solely to inequitable conduct is presented in the jury's presence, there would be prejudice to JCM because of the serious allegations of withholding evidence from and deceiving the PTO. If this evidence is presented to the jury, it may be so prejudicial that a jury would have a difficult time finding in JCM's favor on the other issues properly before the jury. Regarding the consideration of delay caused by bifurcation, it seems that any delay would be minimal because the inequitable conduct trial would take place immediately before or after the jury trial and both trials would be completed within the time set aside for the trial if it was all tried together.

MEI argues that a jury trial on factual issues raised by an equitable claim "is required if those issues are common to factual issues raised by legal claim in the case," (#183 at 14), which MEI argues is the case here. In support of MEI's argument for why the Court should not bifurcate, MEI relies upon *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959). In *Agfa Corp. v. Creo Products Inc.*, 451 F.3d 1366 (Fed. Cir. 2006), the Federal Circuit faced a similar argument for denial of a request to bifurcate based on *Beacon Theatres*, which argument the Federal Circuit denied.

In *Agfa Corp.*, a patentee, Agfa, brought an action against a competitor, Creo, alleging that Creo had infringed Agfa's patents for an automated computer-to-plate system for making multiple printing plates. *See id.* at 1370–71. The district court bifurcated the trial, first holding a bench trial on the claim of inequitable conduct, which resulted in the court holding that Agfa's patents were unenforceable. Agfa appealed the result and challenged the district court's order granting Creo's request that inequitable conduct be tried to the court, prior to a jury trial on the other issues in the case. *See id.* at 1369. On its appeal to the Federal Circuit, Agfa relied upon *Beacon Theatres* to argue that bifurcation of the trial was an abuse of discretion.

The Federal Circuit distinguished *Beacon Theatres*. The Federal Circuit provided the following summary of what the Supreme Court decided in *Beacon Theatres*:

> In *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), the Supreme Court explained that a trial judge could not conduct a bench trial (and preclude a jury trial) on equitable declaratory relief claims where that trial would resolve "common" issues with a claim subject to jury resolution. 359 U.S. at 503–04, 79 S.Ct. 948. In *Beacon Theatres*, the declaratory judgment plaintiff sought to raise essentially the same antitrust issues for which the declaratory judgment defendant sought a jury trial. *Id.* The Supreme Court declined to limit the declaratory judgment defendant's jury trial rights solely "because Fox took advantage of the availability of declaratory relief to sue Beacon first." *Id.* at 504, 79 S.Ct. 948. *Beacon Theatres* specifically noted that both the petitioner's claim and the declaratory relief claim involved "a common issue." *Id.*

*Id.* at 1372.

The Federal Circuit noted that the *Agfa Corp.* case involved issues of inequitable conduct and validity, which naturally overlap to some degree. Nonetheless, the Federal Circuit held that "[w]hile

the inequitable conduct and validity questions in this case overlap in the consideration of some aspects of the same relevant evidence, they do not involve a common issue." *Id.* As a result, *Beacon Theatres* was not controlling. As additional support, the Federal Circuit cited the following language from the controlling precedent *Gardco Manufacturing, Inc. v. Herst Lighting Co.*, 820 F.2d 1209 (Fed. Cir. 1987):

> The simple fact is that a patent may be valid and yet be rendered unenforceable for misuse or inequitable conduct. Similarly, a valid patent may be (in the abstract) infringed, that is, the accused device may fall within the scope of the claim, but there will be no liability to the patentee when the patent is unenforceable. Thus the conduct-of-the-applicant-in-the-PTO issue raised in the nonjury trial and the separated infringement/validity issues are distinct and without commonality either as claims or in relation to the underlying fact issues.

*Id.* (quoting *Gardco*, 820 F.2d at 1213).

In *Gardco*, the Federal Circuit held that a district court did not abuse its discretion in trying an inequitable conduct claim prior to a jury trial on the validity and infringement causes of action. In *Agfa Corp.*, the Federal Circuit upheld *Gardco* as the law of the circuit, stressing that it "ha[d] consistently treated inequitable conduct as an equitable defense that may be adjudicated by the trial court without a jury." *Agfa Corp.*, 451 F.3d at 1375. As a result, the law of the Federal Circuit is that "a judge retains the discretion to conduct a bench trial on the equitable issue of unenforceability in the same case where invalidity is to be tried to a jury." *Id.*

In light of the foregoing, the Court must follow the controlling precedents of *Agfa Corp.* and *Gardco*. JCM's infringement claims and MEI's inequitable conduct counterclaim do not involve the "common issues" that were controlling in *Beacon Theatres*. As a result, the Court agrees with the arguments set forth by JCM, and in accordance with the discretion vested in the trial court, through the federal rules as well as Federal Circuit precedent, finds that bifurcation is appropriate in the present case. There is no need to burden the jury with evidence of equitable misconduct that is to be decided by the Court. MEI's inequitable conduct defense is an equitable defense; the Court, not the jury, is obligated to decide this issue. *See Mylan Pharmaceuticals, Inc. v. Thompson*, 268

F.3d 1323, 1331 (Fed. Cir. 2001) ("The equitable defenses include unclean hands, unenforceability of the patent for fraud and inequitable conduct, misuse, and delay in filing suit resulting in laches or estoppel."). As stated by the Federal Circuit, the issues of infringement and invalidity are distinct questions from that of inequitable conduct, which need not be tried together. *See Old Town Canoe Co.*, 448 F.3d at 1322. The Court does not find that the facts underlying the inequitable conduct claim are the same or so entwined with evidence relevant to the infringement or invalidity claims as to prevent bifurcation. The lack of commonality between the inequitable conduct counterclaim and the infringement and invalidity claims, as well as the threat of prejudice to the jury, lead the Court to hold that bifurcation of the inequitable conduct counterclaim is justified, a decision that is clearly permissible under Federal Circuit precedent.

## V.     MOTION TO SUPPLEMENT

MEI has moved the Court to allow MEI to supplement the expert report of Professor Theodore Grossman. The supplementation would be limited to addressing the on-sale bar issue, specifically whether the October 1992 models that JCM sold to SGI met each and every claim limitation of the '406 patent.

Federal Rule of Procedure 26(a) mandates early disclosure of the parties' intended trial witnesses and exhibits. Rule 26(e) also requires parties to timely supplement all discovery, such as interrogatory answers, when the disclosing party learns "that in some material respect the information disclosed is incomplete or incorrect." Federal Rule of Civil Procedure 37(c)(1) "gives teeth" to these disclosure requirements by authorizing the imposition of sanctions as Rule 37(c)(1) "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule . . . ."; *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

"Two express exceptions ameliorate the harshness of Rule 37(c) (1): The information may be introduced if the parties' failure to disclose the required information is substantially justified or

harmless." *Yeti*, 259 F.3d at 1106. The burden to prove substantial justification or harmlessness is on the party facing sanctions. *Id.* at 1107. Moreover, the district court has wide latitude in exercising its discretion to issue sanctions under Rule 37(c)(1). *Id.* at 1106 (citing *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001)).

MEI argues that Professor Grossman was unable to opine upon the October 1992 models in his expert report. MEI states that Professor Grossman's report was due January 25, 2008 and that JCM did not produce the invoices that revealed the sale of the October 1992 models until January 18, 2008. MEI admits, however, that Professor Grossman was able to opine upon this issue in his deposition. At this late stage, the Court does not see a sufficient reason for allowing MEI to supplement Professor Grossman's expert report. MEI may develop Professor Grossman's testimony on the on-sale bar and the similarity between the October 1992 models and the '406 patent during his trial testimony.

**CONCLUSION**

IT IS HEREBY ORDERED that MEI's Motion to Reconsider, or in the Alternative, for Leave to Supplement the Expert Report of Theodore Grossman (#172) and JCM's Motion to Dismiss MEI's Second and Fifth Counterclaims without Prejudice (#170) *are denied*.

IT IS HEREBY FURTHER ORDERED that JCM's Motion to Bifurcate (#170) is *granted*.

IT IS HEREBY FURTHER ORDERED that, due to the entry of this order, the hearing currently scheduled for Monday, November 24, 2008 at 11:00 a.m. in Courtroom 7D is VACATED.

DATED: November 20, 2008

_____
Robert C. Jones
United States District Judge

(bb)